UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RYAN T. HALLIGAN ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO.: 1:21-cv-1008-TWP-TAB |
| ) | |
| JAMES OLDHAM, ) | |
| DEVON PATTINGILL, ) | |
| JOHN MARTOCCIA, ) | |
| ) | |
| Defendants ) | |

## DECLARATION OF JAMES OLDHAM

I, James Oldham, under penalty of perjury, state that the content of this declaration is based upon my personal knowledge, that I am over the age of 21, that I am competent to testify as to the matters contained in this declaration, and that if called upon to testify, my testimony would be as follows:

1. My name is James Oldham. I am a former classification officer at the Bartholomew County Jail in Columbus, Indiana. I currently provide transport and security for inmates brought to court. I have been employed at the jail since October 2005.

2. I am familiar with the complaint filed by plaintiff Ryan Halligan against me, classification officer Devon Pattingill, and former jail commander John Martoccia concerning his housing in administrative segregation.

3. As a classification officer, my primary duties were to establish housing for new inmates, review inmates' housing status, and answer inmates' questions regarding their housing assignments. I also performed regular jail officer duties as needed. I have received specialized training at Northpointe Institute for Public Management regarding inmate classification.

4. For each new inmate not being released on bond, a classification officer completes a flowchart to determine the inmate's security level based on pending charges, prior convictions, known behavior issues during prior incarcerations, whether there are holds in other jurisdictions, whether the inmate is sentenced, or any other relevant factors. There are eight levels of classification ranging from high (1) to very low (8). Attached hereto as exhibit A is a true and accurate copy of the classification notice I prepared for Halligan. Due to his then current charge being an assaultive felony and a prior conviction for an assaultive felony, his classification level was 2 which is close custody.

5. In most cases, the classification officers decide housing assignments. But in questionable cases, we could consult a member of jail administration.

6. Halligan was assigned to a segregation block due to the above and for his own safety. He was in jail for attacking a professional ice skater who had to be life-lined to Indianapolis due to the extent of her injuries. The attack was reported in the local newspaper to which some inmates subscribe and on television. I knew through experience and training that due to the publicity, inmates in general population were likely aware of Halligan's charge or why he was in jail. Because of the violent nature of the attack, who he attacked, and the extent of the victim's injuries, Halligan was at risk of being assaulted by inmates who were angry about the attack and/or would take it upon themselves to "punish" Halligan for what he was accused of doing.

7. Classification placements are reviewed every two weeks. The classification officers print a roster of all inmates in administrative segregation and review the roster to determine if each inmate's placement remains appropriate. For example, if an inmate had a history of difficulty getting along with others but had recently behaved well, that inmate could be moved to general population. Halligan had been assigned to segregation because his pending charges put him at

risk in general population. Because that risk did not change, the segregation roster review did not result in him moving.

8. The classification officers respond to inmate classification requests submitted through Keefe, the jail's the electronic communication software. I responded to multiple Keefe requests from Halligan. Some were to move to different cells or to have a different hour out when he was in J block which was a segregated block. Thereafter, Halligan started sending messages asking to move to a general population block. At the time of some requests, the entire jail was on lockdown due to COVID, and no inmates were being moved. Halligan also had a 15-day lockdown for a Jail Rule Violation (JRV) sanction. By the time of the JRV, he had been moved to I block which remained a segregation block after the COVID lockdown.

9. In addition to responding to Halligan's Keefe requests, I spoke to him about his desire to move to general population. He said he had friends in K block who he knew since childhood and insisted that he would not have any problems there. Based on what he told me, I thought it was possible that he would be safe in K block. But because of the nature and publicity surrounding Halligan's pending case, the classification officers did not feel comfortable moving him without approval from jail administration. Therefore, we discussed moving Halligan with captain Tyler Stillabower.

10. Once we received administrative approval from captain Stillabower, Halligan was moved to general population in K block.

I AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE FOREGOING STATEMENTS ARE TRUE AND ACCURATE TO THE BEST OF MY KNOWLEDGE AND BELIEF.

Date: 3/31/23

James Oldham
Bartholomew County Sheriff's Department

4

