UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RYAN T. HALLIGAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:21-cv-01008-TWP-TAB |
| ) | |
| JAMES OLDHAM, ) | |
| DEVON PATTINGILL, ) | |
| JOHN MARTOCCIA, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants James Oldham ("Oldham"), Devon Pattingill ("Pattingill") and Jail Commander John Martoccia's ("Martoccia") (collectively, "the Defendants"), Motion for Summary Judgment (Dkt. 78). Plaintiff Ryan Halligan ("Halligan"), formerly a prisoner incarcerated at the Bartholomew County Jail in Columbus, Indiana, initiated this action alleging the Defendants placed him in segregation without a disciplinary report, hearing, or periodic reviews, and denied him recreation time for approximately three weeks in violation of his Fourteenth Amendment rights (Dkt. 23). For the reasons outlined below, summary judgment is **granted**. Additionally, the Court notifies the parties of its intent to **grant** summary judgment as to Halligan's conditions of confinement claim related to the denial of recreation time under Federal Rule of Civil Procedure 56(f).

### I.  STANDARD OF REVIEW

A motion for summary judgment asks the court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment,

the court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.     FACTUAL BACKGROUND

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Halligan as the non-moving party and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

On October 30, 2020, Halligan was arrested and booked into the Bartholomew County Jail, (Dkt. 86-20 at 1), on charges of attempted murder, aggravated battery, criminal confinement, strangulation, auto theft, and related crimes. *See Halligan v. State*, 2022 WL 2196430, *1 (Ind. Ct. App. June 20, 2022) (in the record at Dkt. 78-4). The charges attracted media attention because

the alleged victim was a female professional ice skater who was well-known in the community. (Dkt. 78-1 at 1.)  The alleged victim suffered severe injuries and required helicopter transport to a hospital in Indianapolis after the attack.  *Id*. at 2.  Halligan was initially placed in a holding cell until being transferred to segregation on November 16, 2020.  (Dkt. 86-20 at 1.)  During those seventeen days, he was not let out of the holding cell for an hour of daily exercise.  *Id*.

On November 12, 2020, Halligan submitted a request to be moved to a medical cell for several reasons including "mental problems," his "high profile" case, and because he wanted an hour out of his cell "for [his] mind to clear out".  (Dkt. 78-1 at 11.)  He submitted similar requests on November 15, 2020, and November 16, 2020.  *Id*. at 12.  His last request noted that he did not want to be around people because of his "high profile" case.  *Id*.  Classification Officers Oldham and Pattingill and Jail Commander Martoccia agreed that Halligan would be housed in administrative segregation to protect him from the risk of retaliatory attacks by inmates who would have access to news media covering his case.  (Dkt. 78-1 at 2-3; Dkt. 78-3 at 2; Dkt. 78-2 at 2.)  Halligan was moved to segregation on November 16, 2020.  (Dkt. 86-20 at 1.)

Classification officers reviewed housing assignments approximately every two weeks by printing out a roster of the inmates in segregation and considering whether each inmate's placement remained appropriate.  (Dkt. 78-2 at 2-3; Dkt. 78-3 at 2-3.)  Having been placed in segregation because of the notoriety of his charges, Halligan's periodic reviews did not result in a housing change for him.  *Id*.

At first, Halligan seemed happy with his placement in segregation.  *See* Dkt. 78-1 at 13 ("I[']m thankful[] for [being] put in j block...").  But he soon requested to be placed in general population.  His requests in January 2021 coincided with a four-week COVID lockdown.  *Id*. at

3

32, 33. In February 2021, Halligan asked to be moved when the lockdown ended, but by then he was serving a 15-day disciplinary sentence that ended on February 17, 2021. *Id*. at 7, 35.

Halligan again requested to be moved to general population on March 22, 2021. *Id*. at 45. Oldham and Pattingill discussed the request and decided to seek approval from Assistant Jail Commander Tyler Stillabower. (Dkt. 78-2 at 3.) Oldham advised Halligan that jail administration wanted to wait and discuss the potential move the following week. (Dkt. 78-1 at 46.) On April 13, 2021, Assistant Jail Commander Stillabower approved the request and Halligan was moved from segregation to general population. (Dkt. 78-3 at 3.)

### III. DISCUSSION

After screening Halligan's Second Amended Complaint (Dkt. 23), the Court determined his Fourteenth Amendment claims that the defendants housed him in a holding cell for approximately three weeks with no time outside his cell and that they have housed him in segregation for approximately one year with no periodic review of his placement shall proceed. (Filing No. 24). Defendants seek summary judgment arguing that because Halligan was housed in segregation for managerial rather than disciplinary reasons, he was not entitled to a hearing or other due process protections. They also contend that each defendant is entitled to qualified immunity because it was not clearly established that Halligan was entitled to due process in connection with his placement in segregation. The Court will first discuss Halligan's Fourteenth Amendment claims before turning to his conditions of confinement claim, which Defendants have not addressed.

### A. Fourteenth Amendment Due Process Claims

"A pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard," but "no process is required if he is placed

in segregation not as punishment but for managerial reasons." *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002).  "[N]o hearing would be required" if an inmate "was placed in segregation to protect him[] from other prisoners, or to protect jail staff from his violent propensities." *Id.*

The undisputed record shows that Defendants held Halligan in segregation for his own safety because the media had publicized the charges against him which implicated the brutal assault of a local public figure. In his return and answers to request for admissions, Halligan admitted that he was housed in administrative segregation "due to the nature of [his] criminal charges." (Dkt. 78-6 at 7).  He now speculates that Defendants placed him in segregation as punishment for charges pending against him: "I believe without a reasonable doubt that [Defendants] had a vendetta of some sort against me due to the charges that were pending against me."[1] (Dkt. 86-20 at 4.)  But Halligan is bound by his admission that he was housed in segregation because jail officials feared for his safety due to the public interest in his case.  Fed. R. Civ. P. 36(b) ("A matter admitted under this rule is conclusively established. . .").  And speculation alone is not enough to defeat summary judgment.  *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (non-movant receives the "benefit of reasonable inferences from the evidence, but not speculative inferences in his favor" (cleaned up)).  "Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough." *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018) (cleaned up).  Halligan was not entitled to due process before being placed in administrative segregation because it is undisputed that he was placed there for managerial and safety reasons, rather than as punishment.

---

[1] Halligan also argues that Defendants determined his security classification based on an incorrect assumption that he had been previously convicted of a violent assault. (Dkt. 86-20 at 6; Dkt. 78-2 at 5.)  Although the flow chart completed by Oldham included the incorrect determination that Mr. Halligan had been convicted of felony assault, Defendants have testified that Mr. Halligan's placement in segregation was based on concerns for his safety rather than concerns that he would injure others. Thus, the error on the flowchart does not support Mr. Halligan's theory that Defendants placed him in administrative segregation as punishment for his charges.

The United States Supreme Court has held that once assigned to administrative segregation, prisoners are entitled to meaningful periodic reviews of their placement. *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). But the Seventh Circuit has held that six months in segregation is too short a time to implicate a Fourteenth Amendment right to periodic review unless the conditions of segregation are unusually harsh. *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). Assuming Halligan was entitled to periodic review of his placement, the record shows that his placement was reviewed approximately every two weeks. Defendants considered his request to be moved to general population after a COVID lockdown was lifted and he completed a disciplinary sentence, and his request was ultimately granted. No reasonable juror could conclude, based on this record, that Halligan was denied meaningful periodic reviews during his approximately six-month stay in administrative segregation. Defendants are therefore entitled to summary judgment on the Fourteenth Amendment due process claim.

Because the Court has found as a matter of law that Defendants did not violate Mr. Halligan's constitutional rights, the Court need not address their qualified immunity argument. *Sparing v. Village of Olympia Fields*, 266 F.3d 685, 688 (7th Cir. 2001) (the first step of a qualified immunity determination is whether the plaintiff has shown the violation of an actual constitutional right).

**B.**   **Conditions of Confinement: 17 Days Without Recreation Time**

In his Second Amended Complaint, Halligan also alleged that Defendants violated his constitutional rights by denying him an hour outside of his holding cell for approximately seventeen days when he was first booked into the Bartholomew County Jail. (Dkt. 23 at 2.) Conditions-of-confinement claims for pretrial detainees, which flow from the Due Process Clause of the Fourteenth Amendment, are analyzed under an objective standard. *Hardeman v. Curran*,

933 F.3d 816, 821–22 (7th Cir. 2019). Under this standard, the plaintiff must show "that the conditions in [the jail] posed an objectively serious threat to his health; that the [defendant's] response was objectively unreasonable under the circumstances; and that [the defendant] acted purposely, knowingly, or recklessly with respect to the consequences of [his] actions." *Mays v. Emanuele*, 853 F. App'x 25, 27 (7th Cir. 2021) (citing *Hardeman*, 933 F.3d at 823, 827 and *Miranda v. County of Lake*, 900 F.3d 335, 353–54 (7th Cir. 2018)).

The Defendants did not seek summary judgment on this claim and did not address it in their briefing. In his briefing, Halligan reasserted his that he was not provided any recreation time while housed in the holding cell. ( Dkt. 86 at 2-3.) That said, a Court may grant summary judgment on grounds not raised by a party, as long as it provides notice and a reasonable time to respond. Specifically, Rule 56(f) provides that after giving notice and a reasonable time to respond, the court may:

(1) grant summary judgment for a nonmovant;

(2) grant the motion on grounds not raised by a party;

(3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

(Fed. R. Civ. P. 56(f).

Halligan has identified no physical harm he suffered because of the short-term lack of recreation time. Any alleged risk of harm is not compensable without evidence of injury. *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020). Although the Court has located no authority for addressing whether a short-term denial of recreation presents an objectively serious threat to an inmate's health, the Seventh Circuit has held that such denials do not violate the Eighth Amendment. *Thomas v. Ramos*, 130 F.3d 754, 764 (7th Cir. 1997) (denial of outdoor exercise for 70 days did not violate Eighth Amendment).

Considering the record before the Court and construing the evidence in the light most favorable to Halligan, the Court finds that no reasonable jury could conclude that a mere seventeen days without an opportunity to exercise outside of his holding cell posed an objectively serious threat to Halligan's health, it appears that summary judgment is also warranted on this claim. Because Defendants did not seek summary judgment on the conditions of confinement claim, Halligan shall have an opportunity to respond and designate evidence, if any.  Defendant will also have an opportunity to respond to the Courts notice. The parties shall have **thirty (30) days** to file a response to the Courts' notice.

## IV.    CONCLUSION

For the reasons explained above, Defendants' Motion for Summary Judgment, Dkt. [78], is **GRANTED as to Halligan's Fourteenth Amendment due process claim**.  No partial final judgment shall enter at this time.

The Court provides the parties notice under Rule 56(f) of its intent to grant summary judgment to Defendants on Halligan's conditions of confinement claim based on the denial of recreation time for seventeen days.  The parties, however, have **thirty (30) days from the date of this Order** to respond.

**SO ORDERED.**

Date: 2/29/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Ryan T. Halligan, #150252
WABASH VALLEY CORRECTIONAL FACILITY
P.O. Box 1111
Carlisle, Indiana  47838

Rosemary L. Borek
KNIGHT HOPPE KURNIK & KNIGHT, LTD
rborek@khkklaw.com